The STATE of Texas, Appellant,

v.

Steven N. FISCHER, a/k/a Steve Fischer, and Juvencio Salazar, Appellees.

No. 13–88–299–CV.

Court of Appeals of Texas,
Corpus Christi.

March 23, 1989.

Rehearing Denied April 27, 1989.

William L. Morrow, Harlingen, Lee P. Fernon, Raymondville, for appellant.

David L. Garza, Rio Grande City, Richard J. W. Nunez, Brownsville, Steve Fischer, Raymondville, for appellees.

Before NYE, C.J., and KENNEDY and BENAVIDES, JJ.

## OPINION

NYE, Chief Justice.

This is an injunction suit instituted in *quo warranto* by appellant, State of Texas, through its county attorney pro tem, the Hon. William L. Morrow, against appellees, the Hon. Steven N. Fischer and Juvencio Salazar. This appeal concerns only the State's suit against appellee Fischer.

The State's suit sought to have appellee declared not to be the Democratic Party nominee for the office of Willacy County Attorney. The suit alleges that according to Tex.Elec.Code Ann. § 141.001(a)(5)(A) (Vernon 1986), appellee is ineligible to be a candidate on the 1988 Democratic primary election ballot for Willacy County Attorney because he failed to continuously reside in Willacy County for six months immediately preceding January 2, 1988, the filing deadline for a place on the March 8, 1988 primary election ballot. In response to special question number one, the jury found that appellee did reside continuously in Willacy County from July 2, 1987 until January 2, 1988.

By two points of error, the State attacks the factual and legal sufficiency of the evidence to support the trial court's verdict. In considering "no evidence" and "insufficient evidence" points of error, we will follow the well-established test set forth in Calvert, *No Evidence and Insufficient Evidence Points of Error,* 38 Texas L.Rev. 361 (1960). However, before addressing these points, we must resolve appellee's contentions challenging the State's right to plead this suit in *quo warranto,* Morrow's standing to bring this suit on the State's behalf, and the "probable cause" to support the filing of this petition. We conclude that the State, through its county attorney *pro tem,* had probable ground to bring this *quo warranto* action.

Tex.Civ.Prac. & Rem.Code Ann. § 66.001 (Vernon 1986) provides in relevant part that:

An action in the nature of quo warranto is available if:

(1) a person usurps, intrudes into, or unlawfully holds or executes a franchise or

an office, including an office in a corporation created by the authority of this state;

Appellee argues that the State prematurely filed its *quo warranto* action. He maintains that at the time the State filed its suit, he was only a nominee and had not yet assumed the duties of Willacy County Attorney. Therefore, an action in the nature of *quo warranto* was not available to the State because he was not unlawfully holding, usurping, or intruding into an office proscribed by section 66.001(1).

Our Supreme Court, in *Staples v. State ex rel. King,* 112 Tex. 61, 245 S.W. 639, 640–41 (1922), defined *quo warranto* as a prerogative writ through which the State acts to protect itself and the good of the public generally through its chosen agents as provided by its constitution and laws, though sometimes it is brought at the instance of and for the benefit of a private individual who may have a special interest. In *Allen v. Fisher,* 118 Tex. 38, 9 S.W.2d 731 (Comm'n App.1928, opinion adopted), a case factually analogous to the one before us, the Texas Commission of Appeals illustrated a situation where the State could act to protect itself and the public good. In *Allen,* plaintiff filed an injunction suit against the chairman of the Democratic Executive Committee and another, Braly, to restrain the certification of Braly as the Democratic nominee and to prevent his name from being placed on the general election ballot. The suit alleged that Braly was ineligible to be a candidate on the general election ballot because he failed to meet the residency requirements in order for his name to appear on the primary election ballot. The Court ruled that even though a candidate be ineligible as alleged, the certification of the candidate's name as the party nominee, and the placing of his name on the general election ballot are matters of public concern exclusively, and any suit regarding these matters must be prosecuted by the State. *Allen,* 9 S.W.2d at 732.

In the instant case, in order to protect itself and the public good, the State certainly had an interest in preventing appellee's name from appearing on the general election ballot due to the allegation that he failed to satisfy the residency requirements mandated by section 141.001(a)(5)(A). Furthermore, the issue of whether a candidate has satisfied residency requirements is not a question to be determined by a political party's executive committee, but should be judicially determined. *Parker v. Brown,* 425 S.W.2d 379, 380–81 (Tex.Civ. App.—Tyler 1968, no writ). Accordingly, the instant action had to be brought by the State in *quo warranto,* and we do not interpret section 66.001(1) as limiting the State's power to bring this action. Section 66.001(1) lists several situations where "[a]n action in the nature of quo warranto is available ...," but does not specify that these are the *only* situations when a *quo warranto* suit can be brought.

Next appellee complains that this *quo warranto* action was filed by a private attorney without "probable cause." Appellee maintains that only a State's attorney can bring a *quo warranto* action provided said action is based upon "probable cause" and filed with leave of court granted by a district judge. The Hon. William L. Morrow, acting as Willacy County Attorney Pro Tem, filed this suit on the State's behalf. Later, he filed a motion to proceed by attorney appointed as county attorney pro tem wherein he asserts that he filed this suit as a private attorney appointed as Willacy County Attorney Pro Tem for the limited purpose of prosecuting this suit. He also asserts that the Willacy County Attorney is authorized by law to appoint a private attorney to act on the State's behalf for the limited purpose of prosecuting a specific suit.

According to Tex.Gov't.Code Ann. § 41.102 (Vernon 1988), a county attorney may employ the assistant prosecuting attorneys and other personnel necessary to operate the office. We hold that section 41.102 authorized the Willacy County Attorney to appoint Morrow as Willacy County Attorney Pro Tem for the sole purpose of prosecuting this suit. Furthermore, if grounds for the remedy exist, a county attorney may petition the district court to

file an information in the nature of a *quo warranto.* Tex.Civ.Prac. & Rem.Code Ann. § 66.002(a) (Vernon 1986).

Section 66.002(d) of the same statute provides that "[i]f there is probable ground for the proceeding, the judge shall grant leave to file the information, order the information to be filed, and order process to be issued." In the instant case, the trial court granted the State's motion for leave to proceed in quo warranto. For the purpose of determining whether probable ground exists to support this proceeding, we will accept as true the allegations contained in the State's petition. If the petition states a cause of action, then the trial court did not err in granting permission to file it. *State v. City of Oragne,* 274 S.W.2d 886, 888 (Tex.Civ.App.—Beaumont 1955, no writ).

■ The petition alleges that appellee was a candidate for Willacy County Attorney in the 1988 Democratic Party primary election. The petition also alleges that appellee was ineligible to be a candidate because he had not resided continuously in Willacy County for six months immediately preceding the filing deadline of January 2, 1988, as required by section 141.-001(a)(5)(A). Included with the petition is the Hon. Lee Price Fernon's affidavit. Fernon, the Willacy County Attorney, declares that he hired appellee as an employee at the Willacy County Attorney's Office, and that he knows when appellee moved to Willacy County. Fernon also declares that he has personal knowledge that appellee did not reside continuously in Willacy County for six months immediately preceding January 2, 1988. We hold that the petition presented alleged matters constituting probable ground to judicially determine appellee's eligibility to be the Democratic Party nominee for Willacy County Attorney.

Finding no merit in appellee's procedural challenges, we answer the State's two points of error of no evidence or insufficient evidence. In May 1987, appellee visited Raymondville, Willacy County. He spent three nights in the Raymondville Hotel, walked the streets, and looked at homes for sale. He liked the town and said he would like to live in Raymondville. The Hon. Lee Price Fernon, Willacy County Attorney, received from appellee a resume and cover letter dated May 13, 1987. Fernon sent a letter to appellee's El Paso address informing him that he had no job openings but would keep his resume on file. Between May and June, appellee spent another night in the Raymondville Hotel. During this visit, he introduced himself to Fernon. Appellee testified that he "felt" his intent to reside in Willacy County originated when he applied for work there.

On June 22, 1987, a vacancy appeared in Fernon's county attorney's office and he notified appellee at his El Paso address of such vacancy. In the last week of June, appellee, while in El Paso, telephoned Fernon concerning the job vacancy. Appellee testified that Fernon told him, "You are the only applicant and you can have the job." Upon learning this, appellee believed Willacy County became his residence at this point of time. (June 1987). Appellee testified that he "pretty much" told Fernon during this conversation that he "would take the position." Appellee's testimony indicates that in May, June, and July, he told people that he was going to live and work in Willacy County. During June and July, he applied to teach classes at Pan American University (this school lies in a county adjacent to Willacy County).

It was not until July 23, 1987, when appellee actually had a job interview with Fernon concerning the vacancy. Fernon explained to him that budget problems existed and that all county departments would lose one staff person. He also told him that by law, he had to advertise the vacancy for two consecutive weeks and that he could not hire him or tell him that he had the job until the July 31 application deadline expired. On August 4, 1987, the funding for this vacancy disappeared and Fernon notified appellee of this fact that no job existed in Willacy County.

Deaf Smith County District Attorney, Hon. Roland Saul, testified that he interviewed appellee for a job in July 1987. Saul testified that appellee told him he was

living in El Paso, Texas. By letter dated July 29, 1987, appellee told Saul that he "decided to accept" the Willacy County job. It was August 4, 1987, that the Willacy Assistant County Attorney Job disappeared for lack of funds. Then on August 31, 1987, appellee began working for Saul in Hereford, Deaf Smith County, Texas, as an assistant district attorney. He moved to Deaf Smith County and lived in an apartment, signing a six month lease. During this time, he registered to vote in Deaf Smith County stating he was a resident of that county. He opened a bank account. Appellee testified that when he accepted the job in Deaf Smith County, he did not think that he would be at this job past December 1987. He did not consider this job to be permanent. Appellee admitted that while in Deaf Smith County, he did not call Willacy County his home.

On September 18, 1987, appellee was fired and left his Deaf Smith County job. On September 21, 1987, he went to Raymondville and accepted the job as an Assistant Willacy County Attorney. He lived in Willacy County from this date through January 2, 1988, (about three-and-a-half months). He also admitted that he "might not" have returned to Willacy County if no jobs were available.

The relevant portions of Tex.Elec.Code Ann. § 141.001 are as follows:

(a) To be eligible to be a candidate for ... public elective office in this state, a person must:

(5) have *resided continuously* in the state for 12 months and in the territory from which the office is elected *for six months immediately preceding the following date:*[1]

(A) for a candidate whose name is to appear on a general primary election ballot, the date of the regular filing deadline for a candidate's application for a place on the ballot; (emphasis supplied)

Tex.Elec.Code Ann. § 172.023(a) (Vernon Supp.1989) provides:

(a) An application for a place on the general primary election ballot must be filed not later than 6 p.m. on January 2 in the primary election year unless the filing deadline is extended under Subchapter C.

■ In the instant case, the primary in which appellee participated occurred on March 8, 1988. Therefore, the State had the burden to prove by a preponderance of the evidence that appellee did not reside *continuously* in Willacy County for six months immediately preceding January 2, 1988, i.e. July 2, 1987. We hold that the State met its burden.

Tex.Elec.Code Ann. § 1.015(a) (Vernon 1986) provides that "residence" shall mean "domicile," and defines domicile as "one's home and fixed place of habitation to which he intends to return after any temporary absence." Furthermore, subsection (b) of the same statute requires that residence "be determined [by] the common-law rules, as enunciated by the courts of this state ...," unless those rules are in conflict with the statute. In *Mills v. Bartlett*, 377 S.W.2d 636, 637 (Tex.1964), our Supreme Court announced rules applicable in determining a person's residence for purposes of the election code. In *Mills*, the defendant went to Van Zandt County and entered into an agreement with the county attorney which provided that they would form a law partnership, and that after finishing school, defendant would return to the county and become assistant county attorney. Defendant declared then and there his intention to become a Van Zandt County resident. He spent that night in another county but returned the next day. Back in law school, he told his friends that he had chosen Van Zandt County as his "place of residence." Defendant received his law degree, returned to Van Zandt County, and satisfied the prior agreement. Mills filed suit to prevent defendant Bartlett's name from being placed on the primary election ballot. The suit alleged that the defendant did not meet the residency requirements which required a candidate to be in the county six months next preceding the primary election date.

■ The Supreme Court said that residence depends upon the circumstances sur-

1. Emphasis supplied throughout.

rounding the person involved and largely depends upon an individual's present intentions. Volition, intention, and action are factors to be considered in determining where a person resides and these factors are equally pertinent in denoting the permanent residence or domicile. Neither bodily presence nor intention, standing alone, will suffice to create residence, but at the moment the two coincide, the residence is fixed and determined. The Supreme Court determined that the defendant Bartlett was a Van Zandt County resident. They arrived at this determination by stating that when defendant went to Van Zandt County, he "entered into a binding contract of law partnership as well as of employment ... as Assistant County Attorney and to all intentions and purposes decided and declared that Van Zandt County would be the county of his residence from that time forward." "When [defendant] ... left [Van Zandt County] ... it was for a temporary absence with a fixed intention to return." The Court found a "combined volition, intention and action." These factors are not present in the instant case.

At most, appellee's testimony indicates that from July 2, 1987, and thereafter he:

(1) applied for a job at the Willacy County Attorney's Office;

(2) spent about four days at a hotel in Willacy County;

(3) looked at some homes for sale in Raymondville;

(4) applied to teach school at Pan American University in Hidalgo County, Texas;

(5) told people he was going to live and work in Willacy County;

(6) received notice of a job vacancy at the Willacy County Attorney's Office;

(7) contacted the Willacy County Attorneys Office and learned that he would probably be the only applicant for the job vacancy; but that

(8) the Fernon's vacancy disappeared and no job was available until September 21, 1987 (well after the July 2, 1987 deadline).

The record clearly shows and appellee admits that he did not have a fixed habitation during June or July. He traveled and lived a part of the time in El Paso, El Paso County, Texas. Appellee was not officially hired by the Willacy County Attorney until September 21, 1987. Moreover, when funding ended for the Willacy County job vacancy, appellee accepted a job in Deaf Smith County in July or August and became a resident of that county. He moved to Deaf Smith County and lived there while working as an assistant county attorney. There is every reason to believe that he would have been there longer had he not been fired. He testified that even though he considered this job temporary, he thought that he would stay at the job until December 1987.

Even though a person need not remain in one place for a set length of time to establish residency, we cannot hold that these activities, standing alone, established Willacy County as appellee's residence or domicile prior to July 2, 1987. Something more is needed. Appellee may have intended to reside in Willacy County at some time or another, but one's residence cannot be determined solely by intention. *Mills*, 377 S.W.2d at 637. Unlike the defendant's predicament in *Mills*, appellee, while in Willacy County, did not enter into any binding employment contract and did not, for all intents and purposes, decide and declare that Willacy County would be the county of his residence from July 2, 1987 and that time forward. Here, there is no combined volition, intention, and action.

We conclude that no evidence exists to support the jury's finding that appellee *continuously* resided in Willacy County from July 2, 1987 to January 2, 1988, and that the contrary proposition was established as a matter of law. We sustain the State's points of error.

The judgment of the trial court is REVERSED and judgment is here RENDERED that appellee is ineligible to serve as Willacy County Attorney.