# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-19-00304-CV

**The State of Texas, Appellant**

**v.**

**City of Double Horn, Texas; Cathy Sereno; R. G. Carver; Bob Link; James E. Millard; Larry Trowbridge; Glenn Leisey; and John Osborne, Appellees**

### FROM THE 424TH DISTRICT COURT OF BURNET COUNTY
### NO. 49209, THE HONORABLE EVAN C. STUBBS, JUDGE PRESIDING

## O P I N I O N

The State of Texas complains of the trial court's order denying its petition for leave to file an information in the nature of quo warranto, seeking to challenge the City of Double Horn's incorporation as a municipality. *See* Tex. Civ. Prac. & Rem. Code §§ 66.001–.003 (governing quo warranto suits). Appellees are the City of Double Horn and its elected officials.[1] Because we conclude that the State's petition for leave stated a probable ground for a quo warranto proceeding, we will reverse the trial court's order dismissing the State's petition and remand this cause for further proceedings.

## BACKGROUND

The State filed its "Petition for Leave to File an Information in the Nature of Quo Warranto" seeking to "declare the incorporation of the City of Double Horn, Texas, invalid and

---

[1] In this opinion, we will refer to the City of Double Horn as "the City" and the City and its officials, collectively, as "Double Horn."

void for failure to comply with statutory requirements for incorporation and to remove the officers of the City of Double Horn from office." The State alleged that the City's incorporation as a Type-B general-law municipality did not meet two statutory requirements: (1) that the community intending to incorporate constitutes an unincorporated town or village prior to incorporation, and (2) that the proposed boundaries include only the territory to be used strictly for municipal purposes. *See* Tex. Loc. Gov't Code §§ 7.001(1), .002(b).

The State attached to its petition an "Information in the Nature of Quo Warranto," verified by its counsel, and several exhibits. The State's petition and information alleged the following relevant facts:

- Prior to incorporation, the City of Double Horn was a subdivision of approximately 92 homes in Burnet County, west of Spicewood, Texas on the north side of Texas State Highway 71.

- The subdivision consists of homesites and a single common area that includes a community pool and covered outdoor pavilion.

- The subdivision has no wastewater utility; the homes rely on septic.

- The subdivision obtains its water from wells, and the water is delivered by the Double Horn Creek Water Supply Corporation, but water is not provided to the property owned by Spicewood Crushed Stone LLC (SCS).

- SCS owns approximately 281 acres of rural undeveloped land adjacent to the eastern boundary of the subdivision. SCS plans to use the tract for quarry operations after obtaining all required permits.

- Upon learning of the proposed use for the SCS tract, some residents of the Double Horn subdivision began considering incorporation as a means to stop SCS from operating a quarry on its land.

- The incorporated City of Double Horn includes within its boundaries the Double Horn subdivision and SCS's property.

- The Double Horn subdivision was just that: it was a residential subdivision, not a "town" or "village." It has no stores. The only businesses include a process service

2

company and a storage building located along State Highway 71. It has no churches. It lacks a school. It lacks a gas station with a convenience store. It even lacks a public building that the residents can use for city business. To conduct city business, officials are left to the choice of the open-air pavilion, the pool area, or someone's living room.

- Even if the subdivision could have been considered an existing town or village, SCS's property was not part of it. SCS's property is rural in character. It is agricultural land, not urban land. There is no unity between SCS's land and the Double Horn subdivision. SCS's land is not part of a compact center or nucleus of population.

- [L]and within the town must be susceptible of receiving some municipal services [to constitute a town or village]. . . . There is no evidence whatsoever that the City of Double Horn (or the residents of the prior subdivision) intends to provide its commercial residents any services typically provided by cities. There is no central wastewater facility to connect to SCS property. There is no stated plan to connect water service to SCS property. There is no stated plan to allow SCS to partake in the road improvement projects available to the subdivision or connect the property to the rest of the community. [Citation omitted.] There is no stated plan to create and provide police, fire, or other emergency services to the city or to SCS.

- Land cannot be included within a town solely for tax purposes. [Citation omitted.] If the city remains incorporated, and assuming the city will exercise its authority to tax the property within its boundaries, SCS will be subject to city taxes without receiving any corresponding public benefit. SCS will be the largest landowner (and taxpayer) in town. In fact, it will be in the position of funding the city's effort to block SCS's project. No one has any expectation that SCS's property will be developed as part of the city. In fact, the only apparent purpose of the city's incorporation is to prevent the development of the SCS property.

- This is not a case where the proposed town residents anticipate commercial development to serve the community. On the contrary, the residents have included land that they know will *not* be developed as part of the city. Texas case law since 1891 has stated that residents cannot include undeveloped land that they know will not eventually be developed for municipal purposes.

Double Horn filed a response in opposition to the State's petition for leave and, subject thereto, answered the lawsuit. After a hearing on the matter, at which the trial court admitted several exhibits offered by Double Horn, the trial court signed an order denying the State's petition for leave and dismissing its lawsuit.

3

**STANDARD OF REVIEW**

We review a trial court's denial of leave to file an information in the nature of quo warranto for an abuse of discretion. *State ex rel. Manchac v. City of Orange*, 274 S.W.2d 886, 888 (Tex. App.—Beaumont 1955, no writ) (citing *State ex rel. Eckhardt v. Hoff*, 31 S.W. 290, 290–91 (Tex. 1895)); *State ex rel. Thornhill v. Huntsaker*, 17 S.W.2d 63, 65 (Tex. App.— Amarillo 1929, no writ). A trial court abuses its discretion if it acts without reference to any guiding rules or principles or acts in an arbitrary or unreasonable manner. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). It also abuses its discretion if it either fails to analyze the law properly (e.g., uses an improper legal standard) or fails to apply the law properly to the facts. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992).

**DISCUSSION**

In its first issue, the State contends that the trial court erred in considering the ultimate merits of its case, rather than merely determining whether its pleadings showed a probable ground to file the information. The State's remaining three issues involve evidentiary rulings the trial court made sustaining Double Horn's objections to the State's verified information and attached exhibits and the trial court's admission and consideration of evidence offered by Double Horn at the hearing.

*Quo warranto proceedings generally*

A quo warranto lawsuit is one "through which the State acts to protect itself and the good of the public generally." *Fuller Springs v. State ex rel. City of Lufkin*, 513 S.W.2d 17, 19 (Tex. 1974); *see also Newsom v. State*, 922 S.W.2d 274, 277 (Tex. App.—Austin 1996, writ denied) ("In the modern context, the State uses quo warranto actions to challenge the authority to

4

engage in certain practices specifically enumerated by statute."). Quo warranto proceedings are authorized by statute, *see* Tex. Civ. Prac. & Rem. Code §§ 66.001–.003, and have existed under the common law for centuries, *see Banton v. Wilson*, 4 Tex. 400, 406 (1849) (recognizing quo warranto as "the ancient method of proceeding against those who exercised franchises in derogation of the rights of the crown"). Chapter 66 of the Civil Practice and Remedies Code governs quo warranto proceedings, and the State alleges that two of the nonexclusive reasons authorized thereunder are applicable here: (a) when "a person usurps, intrudes into, or unlawfully holds or executes a franchise or an office," including a municipal office; and (b) when "an association of persons acts as a corporation without being legally incorporated." *See* Tex. Civ. Prac. & Rem. Code § 66.001(1), (3).

The State commonly uses quo warranto proceedings against municipalities to challenge the validity of their incorporation. *See, e.g.*, *Fuller Springs*, 513 S.W.2d at 18 (challenging incorporation of city based on alleged prior annexation of land by adjacent city); *City of West Lake Hills v. State ex rel. City of Austin*, 466 S.W.2d 722, 724 (Tex. 1971) (challenging municipal annexation); *Gonzales v. Concerned Citizens of Webberville*, 173 S.W.3d 112, 119 (Tex. App.—Austin 2005, pet. denied) (describing when quo warranto is necessary to challenge municipal incorporation); *Harang v. State ex rel. City of West Columbia*, 466 S.W.2d 8, 13 (Tex. App.—Houston [14th Dist.] 1971, no writ) (holding that trial court did not err in permitting State to file information on relation of neighboring cities to challenge municipal incorporation). The State also uses quo warranto proceedings to oust municipal officers who unlawfully hold office or exercise power. *See, e.g.*, *Largen v. State ex rel. Abney*, 13 S.W. 161, 163 (Tex. 1890) (holding that municipal officers were not entitled to hold office); *State v. De Gress*, 53 Tex. 387, 401 (1880) (holding that district court erred in dismissing quo warranto lawsuit

5

challenging right of city mayor to hold office); *State v. Fischer*, 769 S.W.2d 619, 622 (Tex. App.—Corpus Christi–Edinburg 1989, writ dism'd w.o.j.) (holding that probable ground existed for county attorney pro tem to challenge eligibility of candidate for office of county attorney).

The attorney general or county or district attorney of the proper county initiates a quo warranto suit by petitioning the district court "for leave to file an information in the nature of quo warranto." Tex. Civ. Prac. & Rem. Code § 66.002(a). The trial court "shall grant leave to file the information, order the information to be filed, and order process to be issued" if there is "probable ground" for the proceeding. *Id.* § 66.002(d); *see also* Tex. R. Civ. P. 780 ("When such information is filed, the clerk shall issue citation as in civil actions, commanding the defendant to appear and answer the relator in an information in the nature of a quo warranto."). A quo warranto suit is a civil proceeding governed by the rules applicable to all civil actions. *Gifford v. State ex rel. Lilly*, 525 S.W.2d 250, 252 (Tex. App.—Waco 1975, writ dism'd by agr.); *see* Tex. R. Civ. P. 781 (stating that defendant in quo warranto is "entitled to all the rights in the trial and investigation of the matters alleged against him, as in cases of trial in civil cases in this State").

### *Proper standard for determining whether the State showed a probable ground*

In its first issue, the State contends that the trial court erred in dismissing its petition because the court considered the ultimate merits of the case rather than merely determining whether the State showed a probable ground to file its information. *See* Tex. Civ. Prac. & Rem. Code § 66.002(a) ("If grounds for the remedy exist, the attorney general or the county or district attorney of the proper county may petition the district court of the proper county . . . for leave to file an information in the nature of quo warranto."). The State contends that the trial court erred by applying "the wrong pleading standard and failing to accept its allegations

6

as true" in determining whether it had a probable ground to bring this action. "If there is probable ground for the proceeding, the judge *shall* grant leave to file the information, order the information to be filed, and order process to be issued." *Id.* § 66.002(d) (emphasis added).

Double Horn counters that quo warranto is an "extraordinary remedy," holding the State to a higher burden to obtain leave of the district court to file the information—a burden requiring the trial court to consider evidence submitted by the parties and to make a probable-ground determination based thereon. Double Horn argues that because the trial court properly sustained its objections to the State's verification and inadmissible evidence and properly admitted the evidence offered by Double Horn, the State failed to meet its evidentiary burden to show a probable ground to file its information.

Significantly, no statute, rule, or caselaw explicitly requires the State to verify its petition or support it with evidence. *Cf. id.* §§ 66.001–.003 (outlining no such requirements); Tex. R. Civ. P. 93 (not including quo warranto in list of pleadings that "shall be verified by affidavit"), 779–782 (outlining no such requirements); *Hunnicutt v. State*, 12 S.W. 106, 108 (Tex. 1889) (noting that if State files information in nature of quo warranto not on relation of another but on its own behalf, "it would seem that [the State's] official statement, unsworn, would be sufficient to authorize a judge to direct an information be filed"); *Alamo Club v. State*, 147 S.W. 639, 640 (Tex. App.—San Antonio 1912, writ ref'd) (noting that quo warranto statutes did not require verified petition). Rather, as contended by the State and determined by our sister courts, the trial court must accept as true the allegations contained in the State's petition in making its probable-ground determination and "need only find that the petition stated a cause of action to proceed." *Ramirez v. State*, 973 S.W.2d 388, 393 (Tex. App.—El Paso 1998, no pet.); *see Fisher*, 769 S.W.2d at 622 ("For the purpose of determining whether probable ground exists

7

to support this proceeding, we will accept as true the allegations contained in the State's petition. If the petition states a cause of action, then the trial court did not err in granting permission to file it."); *City of Orange*, 274 S.W.2d at 888 ("If the petition sought to be filed states a cause of action, the court was in error in refusing permission to file it. We therefore look to the petition to determine its sufficiency.").

While no caselaw specifically defines the phrase "probable ground" in this context, it follows from the above-cited authorities that specific factual allegations of conduct that, if true, would entitle the State to the relief it seeks qualify as adequately stating a cause of action under the probable-ground test. If the State's allegations, taken as true, state a cause of action for quo warranto, the trial court has no discretion but to grant leave to file the information. *See Ramirez*, 973 S.W.2d at 393; *Fisher*, 769 S.W.2d at 622; *City of Orange*, 274 S.W.2d at 888; *see also* Tex. Civ. Prac. & Rem. Code § 66.002(d).

We reject Double Horn's attempt to analogize the trial court's role at the petition-for-leave stage to its role in determining whether it has subject-matter jurisdiction, arguing that the trial court must "screen [a petition] for jurisdiction" by considering evidence and citing *Bland Independent School District v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000) ("[A] court deciding a plea to the jurisdiction is not required to look solely to the pleadings but may consider evidence and must do so when necessary to resolve the jurisdictional questions raised."). The analogy is inapposite, as the question of whether a trial court must grant leave to file an information in quo warranto is not a jurisdictional question, and a court's jurisdiction does not turn on the sufficiency of evidence to support a claim. Rather, jurisdiction is a question of whether a court has "the constitutional or statutory authority to decide the case." *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *see also State Bar of Tex. v. Gomez*,

891 S.W.2d 243, 245 (Tex. 1994) ("As a general proposition, before a court may address the merits of any case, the court must have jurisdiction over the party or the property subject to the suit, jurisdiction over the subject matter, jurisdiction to enter the particular judgment, and capacity to act as a court."). There can be no reasonable contention that the trial court does not have jurisdiction over quo warranto proceedings as the legislature has specifically authorized district courts to adjudicate the proceedings. *See* Tex. Civ. Prac. & Rem. Code § 66.002(a).

Accordingly, we hold that the proper standard for determining whether a petition for leave to file an information in the nature of quo warranto has stated a probable ground is whether the facts alleged in the State's petition, taken as true, state a cause of action for which the quo warranto statute provides a remedy. *See Ramirez*, 973 S.W.2d at 393; *Fisher*, 769 S.W.2d at 622; *City of Orange*, 274 S.W.2d at 888; *see also* Tex. Civ. Prac. & Rem. Code § 66.002(d). To the extent that the trial court applied a different standard, it erred.

### Whether the State met its burden to show a probable ground

Having identified the proper standard a trial court must apply when ruling on a petition for leave to file an information in the nature of quo warranto, we consider whether the State's allegations, taken as true, stated a probable ground for this action.

To prevail on its claim that the City was invalidly incorporated, the State needs to prove that (1) the Double Horn subdivision did not "constitute[] an unincorporated town or village" prior to incorporation, *see* Tex. Loc. Gov't Code § 7.001(1); and (2) the boundaries of the incorporated area do not "contain[] only the territory to be used strictly for municipal purposes," *id.* § 7.002(b); *see State ex rel. Needham v. Wilbanks*, 595 S.W.2d 849, 851 (Tex. 1980) ("The purpose of the incorporation statutes is not to create towns and villages, but to allow

9

those already in existence to incorporate. Incorporation contemplates the existence of an actual village, town, or city.").

The State's petition alleged that the City lacked the characteristics of a village, town, or city prior to incorporation. As outlined in detail above, the State specifically alleged that the City was merely a rural subdivision of homes lacking any of the businesses or institutions typical of towns and villages and that the incorporated area is not susceptible to municipal services. *See Rogers v. Raines*, 512 S.W.2d 729–30 (Tex. App.—Tyler 1974, writ ref'd n.r.e.) (noting that village is "an assembly of houses less than a city, but nevertheless urban or semi-urban in its character, and having a density of population greater than can usually be found in rural districts" and has "compact center or nucleus of population around which a town has developed" and municipal services (citation omitted)); *Harang*, 466 S.W.2d at 11 (noting that, to constitute town or village, area should have "an urban character as distinguished from a rural character," "[t]here should be some degree of unity and proximity between the habitations so assembled . . . [, and] the area . . . should be susceptible of receiving some municipal services").

Additionally, the State's petition made specific factual allegations contesting that the City intended to use all of the territory included in the municipality for strictly town purposes. *See Harang*, 466 S.W.2d at 11 (affirming trial court's judgment on jury's verdict that "those who petitioned for the incorporation of the village of Wild Peach did not intend to use all of the territory incorporated for strictly town purposes" and, thus, that incorporation was invalid); *State ex rel. Mobray v. Masterson*, 228 S.W. 623, 630–31 (Tex. App.—Beaumont 1921, writ ref'd) (reversing trial court's finding that city was properly incorporated because evidence demonstrated that municipal area could not be used strictly for municipal purposes); *see also Noel v. State ex rel. Lufkin Indus., Inc.*, 545 S.W.2d 843, 845 (Tex. App.—Beaumont 1976,

10

writ ref'd n.r.e.) (noting that whether area sought to be included in incorporated city is intended to be used strictly for town purposes is question of fact (citing *State ex rel. Perrin v. Hoard*, 62 S.W. 1054, 1055–56 (Tex. 1901)). As outlined above, the State alleged that the City included the SCS property in its incorporation even though the SCS property would not be used strictly for municipal purposes, would not be developed as part of the City, and is not susceptible to receiving any municipal services such as water, wastewater, or road improvements.

Having reviewed the State's factual allegations, we conclude that the State sufficiently stated a claim for relief on its claim of invalid incorporation and, thus, a probable ground for a quo warranto proceeding. The State's allegations also support its claim at this petition-for-leave stage that the City officials are unlawfully acting as a municipal corporation, as the officials' authority necessarily flows from the City's authority. Therefore, we need not further discuss the State's second claim, alleging that the city officials are unlawfully holding office.

We sustain the State's first issue and hold that the trial court abused its discretion in denying the State's petition for leave to file its information in the nature of quo warranto. Because of our disposition of the State's first issue, we need not address its additional complaints about the trial court's evidentiary rulings and consideration of Double Horn's evidence. *See* Tex. R. App. P. 47.1, .4.

## CONCLUSION

Because the State's petition for leave stated a probable ground for a quo warranto proceeding, we hold that the trial court erred in dismissing the State's petition for leave to file an information in the nature of quo warranto and remand this cause for further proceedings consistent with this opinion.

11

_____

                            Thomas J. Baker, Justice

Before Justices Goodwin, Baker, and Kelly

Reversed and Remanded

Filed:   October 30, 2019