

# NUMBER 13-18-00484-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

ROBERT K. NELSON, MAYOR; JULIE ESTLINBAUM,
COUNCILWOMAN, POSITION 1; BILL CORNMAN,
COUNCILMAN, POSITION 2; AND CITY OF BAY
CITY, TEXAS,                                                        Appellants,

v.

ROBERT NEAL HEAD,                                                    Appellee.

---

On appeal from the 23rd District Court
of Matagorda County, Texas.

---

# MEMORANDUM OPINION

### Before Justices Benavides, Longoria, and Perkes
### Memorandum Opinion by Justice Perkes

This suit involves a challenge to the validity of a provision in a city charter and allegations of ultra vires conduct by city officials. Appellee Robert Neal Head filed suit against appellants, then-Mayor Mark A. Bricker, Councilwoman Julie Estlinbaum,

Councilman Bill Cornman, and Bay City, Texas, seeking declaratory, mandamus, and injunctive relief. The city and its officials appeal from an interlocutory order denying their plea to the jurisdiction. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(8).

During the pendency of this appeal, Robert K. Nelson was elected as Bay City Mayor. Accordingly, he has been substituted as the proper party to this suit. *See* TEX. R. APP. P. 7.2(a). However, for purposes of clarity, our opinion will refer to Head's claims against "Mayor Bricker," not Mayor Nelson.

In what we construe as four issues, appellants contend the trial court erred by denying their plea because: (1) Head lacks standing to bring any of his claims, (2) some of his claims are moot, (3) some of his claims are not ripe, and (4) appellants are otherwise entitled to governmental immunity. We reverse and render a dismissal for want of jurisdiction.

## I. BACKGROUND

Bay City, a home-rule municipality, adopted a city charter in 1989 that provides for a strong-mayor form of mayor-council government. Under this form of municipal government, the mayor is not a member of city council; instead, he serves as the city's chief administrator and executive officer with implied and express powers. Bay City's five-member council serves as the legislative branch, exercising all other powers conferred to Bay City under its charter, the Texas Constitution, and the laws of the State. Under the Bay City Charter, the mayor presides over council meetings, but has no voting authority unless a deciding vote is required to break a tie.

2

In 2013, the Bay City Charter was amended to limit councilmembers and the mayor from serving more than three consecutive terms. On May 30, 2018, Head, a Bay City resident, filed suit alleging that, in addition to voter-approved term limits, non-voter-approved language was erroneously added to § 4.01 of the Bay City Charter that identified the mayor as a councilmember. To illustrate, the italicized language represents the portion Head is challenging as invalid and the underlined language represents the voter-approved amendment:

> The Council shall be composed of five Councilmembers *and the Mayor*. All Councilmembers to be selected at large. Councilmembers No. 1 and 2 shall be elected one year and Councilmembers No. 3, 4, and 5 elected the following year. <u>No Councilmember shall be elected to serve for more than three consecutive two-year terms.</u>

Head contends that this provision destroys the separation of powers between the executive and legislative branches of Bay City's elected form of government. His petition seeks a declaration that § 4.01 is invalid as constituted and names Bay City as a necessary party under the Uniform Declaratory Judgments Act (UDJA). *See* TEX. CIV. PRAC. & REM. CODE § 37.006(b).

Head also alleges that Mayor Bricker engaged in ultra vires conduct by voting in council meetings in the absence of a tie vote. Head specifically alleges that Mayor Bricker cast an improper vote to block Bay City residents from voting on a charter amendment that would have changed Bay City to a manager-council form of government. Head alleges he has standing to bring his claims against Mayor Bricker because that particular vote deprived Head of his right to vote in an election, which he describes as "a particularized injury that is unique to him." Head seeks to have all of Mayor Bricker's

3

improper votes declared void, setting aside any action taken by Bay City that resulted from an improper vote; to enjoin Mayor Bricker from future voting violations; and mandamus relief compelling an election on the charter amendment.  Additionally, Head seeks a declaration that Mayor Bricker is subject to the term limits adopted in 2013.

Head also alleges that Councilwoman Estlinbaum and Councilman Cornman (collectively "Councilmembers") were re-elected to serve a fourth term, beginning in June 2018, in violation of the three-term limit adopted in 2013.  Although he specifically disclaims that he is seeking quo warranto relief (i.e., challenging their right to hold office), he seeks: (1) a declaration that each is subject to the three-term limit; (2) to enjoin the Councilmembers from casting votes during their fourth term; and (3) to compel Bay City to hold new elections for their offices.  Head also alleges that he has taxpayer standing to challenge the Councilmembers' compensation as an illegal expenditure of tax dollars. He seeks a declaration that Bay City does not have the authority to compensate the Councilmembers and an injunction enjoining the city from making any such expenditures in the future.

Appellants filed a plea to the jurisdiction based on standing, mootness, ripeness, and governmental immunity.  The trial court denied the plea, and appellants filed their notice of interlocutory appeal.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(8).

In addition to electing a new mayor during the pendency of this appeal, Bay City passed an ordinance striking the complained-of language from § 4.01 and voters elected to amend the Bay City Charter by changing from a mayor-council to a council/mayor-city

4

manager form of government.[1]   Under this form of municipal government, the mayor became a voting member of city council and a city manager serves as the city's chief administrator and executive officer.

The parties were invited to provide supplemental briefing on whether any of Head's claims have become moot during the pendency of this appeal.   *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 445–46 (Tex. 1993) (recognizing that an appellate court may consider its subject matter jurisdiction sua sponte); TEX. R. APP. P. 38.7 ("A brief may be amended or supplemented whenever justice requires, on whatever terms the court may prescribe.").   Head concedes that his declaratory judgment claim concerning the validity of § 4.01 is now moot.   He also concedes that his claims for prospective injunctive relief against Mayor Bricker are moot but maintains that his claim to have Mayor Bricker's former council votes declared invalid constitutes a viable ultra vires claim.   Head also contends that the remainder of his claims are live, including his request for costs and attorney's fees under the UDJA.

## II.  STANDARD OF REVIEW

Subject matter jurisdiction is a question of law we review de novo.   *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004) (citing *Tex. Nat. Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 855 (Tex. 2002)).   The plaintiff carries the initial burden to plead sufficient facts that demonstrate the trial court's jurisdiction.   *Id.*

---

[1] An appellate court may take judicial notice of certain facts outside the appellate record, *Office of Pub. Util. Counsel v. Public Util. Comm'n*, 878 S.W.2d 598, 600 (Tex. 1994), including city ordinances, TEX. R. EVID. 204; *Amarillo v. R.R. Comm'n of Tex.*, 511 S.W.3d 787, 794 (Tex. App.—El Paso 2016, no pet.), and the results of public elections.   *See* TEX. R. EVID. 201(b); *see also Corpus Christi Hous. Auth. v. Esquivel*, No. 13-10-00145-CV, 2011 WL 2395461, at *2 (Tex. App.—Corpus Christi–Edinburg June 9, 2011, no pet.) (mem. op.).

5

(citing *Tex. Air Control Bd.*, 852 S.W.2d at 446). When, as here, a plea to the jurisdiction is based on the plaintiff's petition, we liberally construe the petition in the plaintiff's favor and take the allegations as true. *Id.* (citing *Tex. Air Control Bd.*, 852 S.W.2d at 446).

## III. ANALYSIS

By their first issue, appellants contend that Head lacked standing to bring any of his claims.

### A. General Principles

"Standing is a constitutional prerequisite to suit." *Heckman v. Williamson County*, 369 S.W.3d 137, 150 (Tex. 2012) (citing *Sw. Bell Tel. Co. v. Mktg. on Hold Inc.*, 308 S.W.3d 909, 915 (Tex. 2010)). "[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Andrade v. NAACP of Austin*, 345 S.W.3d 1, 14 (Tex. 2011) (quoting *Davis v. FEC*, 554 U.S. 724, 734, (2008)). Without standing, a court lacks subject matter jurisdiction and must dismiss any claims that do not meet the standing threshold. *Heckman*, 369 S.W.3d at 150 (citations omitted).

"No Texas court has ever recognized that a plaintiff's status as a voter, without more, confers standing to challenge the lawfulness of governmental acts." *Brown v. Todd*, 53 S.W.3d 297, 302 (Tex. 2001). Instead, "[t]he plaintiff must be *personally* injured—he must plead facts demonstrating that he, himself (rather than a third party or the public at large), suffered the injury." *Heckman*, 369 S.W.3d at 155 (citing *S. Tex. Water Auth. v. Lomas*, 223 S.W.3d 304, 307–08 (Tex. 2007) (per curiam)). Standing also requires a causal connection between the plaintiff's injury and the defendant's

conduct and that the requested relief will likely redress the plaintiff's injury.   *Id.* (citations omitted).

**B.     Claims against Mayor Bricker**

Head sued Mayor Bricker in his official capacity, alleging the mayor engaged in ultra vires conduct by voting at Bay City Council meetings in violation of the Bay City Charter.   Head seeks a declaration that any such vote was invalid, thus setting aside any action taken by Bay City that relied upon an ultra vires vote.   Head identifies himself in his petition as "a Bay City resident and registered voter within the city limits of Bay City" and generally alleges that he "has standing to assert the claims and causes of action in this case."

In describing his claims against Mayor Bricker, Head alleges that:

Mayor Bricker has, on multiple occasions from 2013 to 2018, wrongfully exercised a vote on City Council matters without the presence of a tie, in a flagrant and despicable violation of the Texas Constitution and the City Charter of Bay City, Texas. . . .   One such example occurred in January of this year, 2018, when Mayor Bricker voted to keep a proposition calling for a change in municipal government from a Mayoral form to a City Manager form of government off the ballot in May of this year.   By exercising his "right" to vote on matters not resulting in a tie, Mayor Bricker singlehandedly disenfranchised the entire electorate of Bay City, Texas.   This must be stopped.

Head also filed a supplemental petition seeking "emergency mandamus relief to force the Mayor to immediately place an item on the agenda at the next City Council meeting to enable the enactment of an election order calling for a charter change election in November of 2018."

Head has failed to allege sufficient facts demonstrating how Mayor Bricker's ultra vires votes "on multiple occasions from 2013 to 2018" caused him concrete, particularized

7

injuries that are distinct from the general public. *See Heckman*, 369 S.W.3d at 155. The only vote Head ties to a specific injury was admittedly suffered by "the entire electorate of Bay City, Texas." While qualified voters who sign an initiative petition "have a justiciable interest in the valid execution of the charter amendment election . . . distinct from the general public," Head does not allege that he signed an initiative petition in this case. *See Blum v. Lanier*, 997 S.W.2d 259, 262 (Tex. 1999); *see also In re Hotze*, No., 14-08-00421-CV, 2008 WL 4380228, at *1 (Tex. App.—Houston [14th Dist.] July 10, 2008, orig. proceeding) (per curiam) (mem. op.) ("Signers of an initiative petition have an interest in an election distinct from that of the general public."). Thus, the only injury Head identifies as a result of Mayor Bricker's ultra vires votes constitutes a generalized grievance that Head lacked standing to bring. *See Blum*, 997 S.W.2d at 262; *Heckman*, 369 S.W.3d at 155.

Additionally, the trial court did not have subject matter jurisdiction over Head's mandamus claim because the Legislature has conferred subject matter jurisdiction over this claim to the supreme court and courts of appeals. *See* TEX. ELEC. CODE ANN. § 273.061 ("The supreme court or a court of appeals may issue a writ of mandamus to compel performance of any duty imposed by law in connection with the holding of an election . . . ."). Moreover, Head's mandamus claim is now moot because Bay City held an election on that very proposition during the pendency of this appeal, passing a charter amendment that changed Bay City from a mayor-council to a council/mayor-city manager form of government. *See Heckman*, 369 S.W.3d at 162 ("Put simply, a case is moot when the court's action on the merits cannot affect the parties' rights or interest." (citing

8

*VE Corp. v. Ernst & Young*, 860 S.W.2d 83, 84 (Tex. 1993) (per curiam))).

We also hold that Head's ultra vires claim to have Mayor Bricker's past votes declared invalid is barred by governmental immunity.[2]  The UDJA does not enlarge a trial court's jurisdiction and the ultra vires exception to governmental immunity only affords prospective declaratory and injunctive relief.  *City of El Paso v. Heinrich*, 284 S.W.3d 366, 370, 376–77 (Tex. 2009) (citations omitted).  Head's claim for retrospective declaratory relief based on ultra vires conduct is not a claim for which governmental immunity has been waived.  *See City of Dallas v. Albert*, 354 S.W.3d 368, 378–79 (Tex. 2011) ("*Heinrich* clarified that only prospective, not retrospective, relief is available in an ultra vires claim."); *see also Hailey v. Glaser*, No. 06-12-00065-CV, 2012 WL 5872869, at *3 (Tex. App.—Texarkana Nov. 9, 2012, no pet.) ("The ultra vires exception only permits prospective declaratory relief and does not permit retrospective declaratory relief." (citing *Heinrich*, 284 S.W.3d at 374–77)).  In sum, the trial court never had subject matter jurisdiction over any of Head's claims against Mayor Bricker.

## C.    Claims against Councilmembers

A quo warranto proceeding is the exclusive remedy for challenging a public official's right to hold office and only the State of Texas, not a private litigant, has standing to bring such a claim.  TEX. CIV. PRAC. & REM. CODE ANN. §§ 66.001(1), 66.002; *Orix Capital Markets, LLC v. Am. Realty Tr., Inc.*, 356 S.W.3d 748, 754 (Tex. App.—Dallas

---

[2] Head identifies Bay City as "a necessary party" to his ultra vires claims in his petition.   However, "the governmental entities themselves—as opposed to their officers in their official capacities—remain immune from suit [on ultra vires claims]."  *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372–73 (Tex. 2009). Accordingly, we also hold that Bay City was immune from Head's ultra vires claims.  *See Heinrich*, 284 S.W.3d at 372–73.

2011, pet denied)*; see, e.g., State v. Fischer*, 769 S.W.2d 619, 621 (Tex. App.—Corpus Christi–Edinburg 1989, writ dism'd) ("[T]he issue of whether a candidate has satisfied residency requirements is not a question to be determined by a political party's executive committee, but should be judicially determined. Accordingly, the instant action had to be brought by the State in *quo warranto* . . . .").

In this case, although he expressly disclaims that he is seeking quo warranto relief, Head seeks: (1) a declaration that the Councilmembers are subject to the three-term limit adopted in 2013; (2) to enjoin the Councilmembers from casting votes during their fourth term; and (3) to compel Bay City to hold new elections for their offices. All three claims constitute a clear attack on the Councilmembers' right to serve a fourth term, and as such, Head did not have standing to bring them. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 66.001(1), 66.002; *Orix*, 356 S.W.3d at 754.

Head also alleges that he has taxpayer standing to challenge the Councilmembers' compensation as an illegal expenditure. *See Andrade v. Venable*, 372 S.W.3d 134, 137 (Tex. 2012) (per curiam) ([U]nder Texas law, a narrow, judicially-created exception exists: a taxpayer has standing to enjoin the illegal expenditure of public funds and need not demonstrate a particularized injury." (citing *Williams v. Lara*, 52 S.W.3d 171, 179 (Tex. 2001))). The true nature of Head's claim, however, is a quo warranto proceeding. *See Murphy v. Russel*, 167 S.W.3d 835, 838 (Tex. 2005) (expressing the general concept that "a claimant cannot escape the Legislature's statutory scheme by artful pleading" in the context of a healthcare liability claim). To prevail on his "taxpayer" claim, Head must necessarily prove that the Councilmembers are illegally holding office. *See Lara*, 52

10

S.W.3d at 179 ("Implicit in this rule are two requirements: (1) that the plaintiff is a taxpayer; and (2) that public funds are expended on the allegedly illegal activity."). Only the State has standing to challenge the Councilmembers' right to hold office; therefore, despite the label he placed on it, Head lacks standing to bring this claim. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 66.001(1), 66.002; *Orix*, 356 S.W.3d at 754.

Regardless, Head has failed to establish taxpayer standing because compensating the Councilmembers does not constitute an illegal expenditure. "A taxpayer does not have an interest direct enough to warrant standing unless the activity challenged involves an expenditure of public funds that would not otherwise be made." *Venable*, 372 S.W.3d at 139. The money spent must be an "added expenditure—not one that would have been made in spite of the allegedly illegal activity." *Id.* at 138 (citing *Lara*, 52 S.W.3d at 182.

In this case, Head is not alleging that Bay City illegally created Position 1 and Position 2 on the Bay City Council or that the Councilmembers are receiving additional compensation above the other members. Instead, he alleges the Councilmembers should not receive the normal, appropriated compensation because they are not qualified to hold their offices. But Bay City would be making an identical expenditure regardless of who holds these offices. If the Councilmembers had not been elected to serve a fourth term or were removed in a quo warranto proceeding, their successors would be receiving the same compensation. Thus, Head has failed to plead facts demonstrating that "the activity challenged involves an expenditure of public funds that would not otherwise be made." *See Venable*, 372 S.W.3d at 139. Head has not met the "narrow" taxpayer

11

exception to standing.   *See id.* at 137.

## D.      Claim for Costs and Attorney's Fees

Head challenged the validity of § 4.01 of the Bay City Charter under the UDJA. The UDJA expressly waives Bay City's immunity from this claim by mandating that the city be a named party to the claim.   *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.006(b) ("In any proceeding that involves the validity of a municipal ordinance or franchise, the municipality must be made a party and is entitled to be heard . . . ."); *Heinrich*, 284 S.W.3d at 373 n.6 ("For claims challenging the validity of ordinances . . . the Declaratory Judgment Act requires that the relevant governmental entities be made parties, and thereby waives immunity.").   Although Head concedes this claim was rendered moot when Bay City struck the complained-of language by ordinance, Head's request for costs and attorney's fees under the UDJA[3] survives as a live controversy if Head had standing to bring this claim in the first instance.   *See Camarena v. Tex. Emp't Comm'n*, 754 S.W.2d 149, 151–52 (Tex. 1988).

We conclude Head did not have standing to challenge the validity of § 4.01.   Like any other plaintiff, an individual challenging the validity of a city ordinance must demonstrate a concrete, particularized injury.   *See, e.g.*, *Stop the Ordinances Please v. City of New Braunfels*, 306 S.W.3d 919, 928 (Tex. App.—Austin 2010, no pet.) ("By alleging that the Cooler & Container Ordinance restricted their use of their property, caused them to incur additional expenses, and damaged or destroyed their market for larger cooler rentals within the City limits, the Outfitter Plaintiffs have demonstrated the

---

[3] Under the UDJA, "the court may award costs and reasonable and necessary attorney's fees as are equitable and just."   Tex. Civ. Prac. & Rem. Code Ann. § 37.009.

required actual, concrete, and particularized infringement of their legally protected interests necessary for standing.").

In this case, Head alleges that "Section 4.01 of Bay City's Charter has purportedly been 'changed' to allow the Mayor of Bay City to cast votes in the same manner and substance as every other member of the City Council." We have already determined that Head did not have standing to challenge Mayor Bricker's prior votes because he failed to demonstrate that they caused him a concrete, particularized injury distinct from the general public. Consequently, Head also failed to allege a sufficient injury in fact with respect to his challenge to the validity of § 4.01. *See Heckman*, 369 S.W.3d at 155. Having concluded that Head did not have standing to bring any of his claims under the UDJA, we hold that Head does not have a live claim for costs and attorney fees. *See Camarena*, 754 S.W.2d at 151–52.

## IV.  CONCLUSION

The trial court's order is reversed, and we render a dismissal for want of jurisdiction.

GREGORY T. PERKES
Justice

Delivered and filed the
26th day of November, 2019.

13